UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBIN MCCRANIE,

        Plaintiff,

v.                                          Case No. 5:05-cv-453-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability, disability insurance benefits and Supplemental Security Income. (Doc. 1.) The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions. (Docs. 17 & 19.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED and REMANDED.**

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for social security disability insurance and supplemental security income on May 21, 2001, claiming a disability onset date of May 18, 2001. (R. 73-82, 236.) Plaintiff's application was denied initially (R. 36), and upon reconsideration. (R. 135.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 39.) The ALJ conducted an administrative hearing on December 4, 2003. (R. 228-253.) The ALJ issued a decision unfavorable to Plaintiff

on September 24, 2004. (R. 13-22.)  The Appeals Council denied Plaintiff's request for review on June 30, 2005. (R. 7-9.)  On November 7, 2005, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

### III. SUMMARY OF THE EVIDENCE

Plaintiff was born on November 29, 1966 and was thirty-seven (37) years old at the time of the hearing decision. (R. 236.) Plaintiff has less than an eighth grade education (R. 236), and has past relevant work history as a construction laborer. (R. 237.) Plaintiff contends that he became disabled on May 18, 2001 due to chronic back pain, numbness in the arms and legs, and hepatitis C. (R. 74, 241.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff has the following impairments: hepatitis C, lumbar disc protrusion, degenerative disc disease of the cervical spine, and mild heart valve regurgitation. (R. 21.)

Because the primary challenge to the decision of the ALJ relates to Plaintiff's liver disease and hepatitis C, the Court's evaluation of the medical record will focus on the relevant portions of the medical evidence of record dealing with those issues.

Plaintiff underwent a liver biopsy at Citrus Memorial Hospital on July 27, 2001, at which time he was diagnosed with chronic active hepatitis with evidence for evolving cirrhosis. (R. 94.) Plaintiff was evaluated three weeks later by Dantuluri P. Raju, M.D. at the request of the Division of Disability Determinations. (R. 95-97.) Dr. Raju noted that among other ailments, Plaintiff recently underwent a liver biopsy and had an enlarged liver.

---

[13] 20 C.F.R. § 404.1520(f).

On August 22, 2001, J. Woulfe, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment of Plaintiff. (R. 98-105.) Although Dr. Woulfe concluded that Plaintiff's pain was not credible the medical records he reviewed did not include any statements from treating or examining sources

On September 24, 2001, Plaintiff was seen by Ravi Kondapalli, M.D., a gastroenterologist. (R. 133.) Dr. Kondapalli noted that Plaintiff's "liver function tests are higher than normal, more than twice the upper limit of normal. He has hepatitis C RNA level of 447,000." The records from Dr. Kondapalli also note that Plaintiff's albumin level was normal and the abdominal ultrasound was normal and that the medications Plaintiff was taking could cause "some fatigue, flu-like symptoms, depression and anemia." (R. 133.)

On April 1, 2002, Plaintiff was evaluated by Mario Medero, M.D. at the request of the Office of Disability Determinations. Dr. Medero found that Plaintiff's Prothrombin time was within normal limits. (R. 128.)  However, eight days later, Plaintiff was evaluated at the University of Florida Liver Clinic by David R. Nelson, M.D. (R. 130.) Dr. Nelson found that Plaintiff suffers from chronic hepatitis C of unknown genotype with persistent viremia[14] after five months of treatment with Rebetron. Dr. Nelson recommended hepatocellular carcinoma surveillance every six to twelve months, as well as a yearly ultrasound. (R. 131.)

Donald Warren Morford, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment of Plaintiff on April 29, 2002. (R. 134-141.)

---

[14] Viremia is the presence of a virus in the bloodstream. Stedman's Medical Dictionary (27th ed. 2000).

Dr. Morford did not comment on the credibility of Plaintiff's complaints, but did note that the records from treating or examining sources were not available to him at the time he rendered his opinion.

The record also contains 33 pages of clinical lab results ordered by Anil K. Ram, M.D. and Dr. Kondapalli, dating from June 13, 2001 through January 10, 2003. (R. 146-179.) There are no written evaluations of the significance of these clinical results in the record.

## IV. DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ failed to consider whether Plaintiff's liver disease met or equaled the requirements of Listing 5.05(F). Secondly, Plaintiff contends that the ALJ committed reversible error in mechanically applying the Medical-Vocational Guidelines and in not obtaining expert testimony from a vocational expert.

The Court will turn first to Plaintiff's argument that the ALJ failed to consider Listing 5.05(F), which defines the requirements for chronic liver disease.[15] Plaintiff contends that he meets the criteria for Listing 5.05(F)(3) which requires:

> F. Confirmation of chronic liver disease by liver biopsy (obtained) independent of Social Security disability evaluation) and one of the following:
>
> \* \* \* \* \*
>
> 3. Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes.

---

[15] 20 CFR Pt. 404, Subpt. P, App.1, 5.05(F) (2001).

According to Plaintiff, despite the fact that Plaintiff's counsel argued at the administrative hearing that Plaintiff's liver disease meets the requirements of the Listing, the ALJ failed to even mention Listing 5.05(F) in his decision and failed to make any findings regarding whether this Listing was met or equaled. Further, the Plaintiff contends that the ALJ also erred in not calling a medical advisor to the hearing to address whether Listing 5.05(F) was met or equaled.

Because the ALJ did not specifically mention the reasons why Plaintiff's liver disease did not meet or equal Listing 5:05(F), as a threshold matter, the Court must determine whether the ALJ is required to specifically discuss in the decision the reasons why an impairment does not meet a particular listing.

Relying upon *Clifton v. Chater*[16] from the Tenth Circuit, *Burnett v. Comm'r of Soc. Sec. Admin.*[17] from the Third Circuit and *Groves v. Apfel*[18] from the Seventh Circuit, Plaintiff argues that it is reversible error where the ALJ fails to discuss the evidence and explain the reasons for finding that an impairment does not meet or equal a particular Listing. These cases are based upon the view that where an ALJ simply states a bare conclusion that an impairment does not meet or equal a listed impairment the ALJ's conclusion is beyond meaningful review by the district court. While these out-of circuit cases support Plaintiff's proposition, the same view is not presently shared by the Eleventh Circuit. In the Eleventh Circuit even a cursory discussion of whether a

---

[16] 79 F.3d 1007(10th Cir. 1996)

[17] 220 F.3d 112, 119 (3rd Cir. 2000)

[18] 148 F.3d 809, 811 (7th Cir. 1998)

claimant's impairments meet or equal a listed impairment is sufficient when the record shows that the claimant's impairments do not meet or equal a listed impairment.[19] Accordingly, the failure of the ALJ specifically to mention Listing 5.05(F) in his decision is not, standing alone, a sufficient reason to reverse the decision of the ALJ. Notwithstanding the ALJ's failure to mention Listing 5.05(F) it is reversible error where the substantial evidence of record does not support the ALJ's conclusion that the identified impairments do not meet or equal any listing.

The Court must, therefore, review the medical evidence relied upon by the ALJ to determine whether this evidence supports the ALJ's conclusion that Plaintiff has failed to meet any listing. As discussed below, the evidence relied upon by the ALJ does not support his conclusion that the Plaintiff has failed to meet any Listing, including Listing 5.05(F). Indeed, because an interpretation of the laboratory results submitted by Plaintiff is critical to the determination of whether the Plaintiff has met Listing 5.05(F), the ALJ should have utilized a medical advisor to interpret the laboratory results to determine whether the results were sufficient to establish the listing for chronic liver disease.

The ALJ primarily relied upon medical evidence of the results of physical examinations and ignored the laboratory findings. For example, the ALJ relied upon the fact that Plaintiff's "gastroenterologist stated there was no evidence of cirrhosis, Plaintiff had "normal synthetic function," his bilirubin levels were within normal limits and abdominal ultrasounds have been normal. Furthermore, the ALJ found significant the

---

[19] Hutchinson v. Bowen, 787 F.2d 146, 1463 (11th Cir. 1986)(The ALJ is not required to "mechanically recite the evidence" because there may be an "implied finding that a claimant does not meet a listing."); Barron v. Sullivan, 924 F.2d 227, 230 n. 3 (11th Cir. 1991); Johnson v. Barnhart, 2005 WL 2175130 (11th Cir. 2005)(statement by ALJ that based upon medical evidence claimant did not medically or functionally equal a listed impairment is sufficient).

fact that in April 2002, Plaintiff's prothrombin time was within normal limits and Plaintiff had not had any gastrointestinal bleeding or abdominal swelling.[20]

While this evidence is generally relevant to liver disease, these medical findings do not conclusively establish, one way or the other, whether Plaintiff's liver disease meets the criteria of Listing 5.05(F)(3).  To determine whether Plaintiff meets the listing for chronic liver disease, a complete understanding of Plaintiff's lab results is essential. Mere reliance upon physical examinations of Plaintiff's abdomen, is insufficient to determine whether Plaintiff suffers from "hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction," as required by the Listing.[21]  Critical to the determination of whether Plaintiff's liver disease meets or equals Listing 5.05(F)(3) is the interpretation of the clinical laboratory results, which covered the time period from June 2001 through January 2003. In this case, the ALJ completely failed to address these laboratory results and failed to obtain an opinion from a medical advisor as to whether these laboratory findings were sufficient to evidence that Plaintiff's liver disease met or equaled Listing 5.05(F)(3).

Furthermore, in addition to failing to evaluate more than twenty-eight pages of lab results, the ALJ relied upon the Physical Residual Functional Capacity Assessments by Drs. Morford and Woulfe, the state agency medical consultants, neither of whom had the benefit of the laboratory findings when they performed their assessments and

---

[20] R. 19.

[21] 20 C.F.R. Pt. 404, Subpt. P. App. 1, 5.05(F).

neither of whom commented on the effect Plaintiff's chronic liver disease had on Plaintiff's ability to work.

Where, as here, additional medical evidence is received that may change the findings by the state agency medical consultant, the ALJ "must obtain an updated medical opinion from a medical expert..."[22] The failure to do so in this case is particularly important because a cursory review of the lab results reveals that many of the findings for liver disease are outside of the reference range. Accordingly, the ALJ should have called upon the services of a medical advisor to take into consideration the lab results so that the ALJ could determine whether the lab results supported the criteria for Listing 5.05(F)(3).[23]

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria [and] ... not only some of those criteria ... "[24] Based upon this proposition, the Commissioner contends that the medical evidence submitted by Plaintiff fails to satisfy all of the medical criteria for Listing 5.05(F)(3).

The Commissioner first asserts that Plaintiff has failed to meet the Listing because the record does not evidence that Plaintiff's hepatitis C was active for a consecutive period of at least twelve months. In support of this argument the Commissioner points out that although Plaintiff was diagnosed with hepatitis C and a liver biopsy disclosed chronic active hepatitis in July 2001, Dr. Kondapalli noted three months later, in September 2001, that Plaintiff had normal synthetic dysfunction and

---

[22] SSR 96-9p.

[23] Id.

[24] Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

that the liver biopsy showed no evidence of cirrhosis. Furthermore, the Commissioner points to the fact that subsequent ultrasounds of Plaintiff's abdomen were normal and examination findings regarding Plaintiff's liver and abdomen were unremarkable.

The Commissioner's argument misconstrues the standard for disability under 42 U.S.C. § 423(d)(1)(A), which defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be .... expected to last for a continuous period of not less than 12 months..."[25] Therefore, in order to establish disability Plaintiff only has to submit evidence that the hepatitis C is expected to last for a period of not less than 12 months and not that the hepatitis C was continuously active for 12 months. Accordingly, contrary to the Commissioner's assertion, the Plaintiff did not fail to satisfy the twelve month duration requirement.

The Commissioner goes on to argue that even assuming the Plaintiff satisfied the twelve month duration requirement Plaintiff still has not met the criteria for Listing 5.05(F)(3) because he failed to establish that he had repeated abnormalities of prothrombin time persisting for at least 3 months. As support for this argument, the Commissioner relies upon the April 1, 2002 medical note by Dr. Medero, in which Dr. Medero states that Plaintiff's prothrombin time was within normal limits.[26] The problem with the Commissioner's argument is that this one notation of normal limits for

---

[25] 42 U.S.C. § 423(d)(1)(A) (2004); See Wainwright v. Commissioner of Social Sec. Admin., 2007 WL 708971 (11th Cir. 2007).

[26] R. 128.

11

prothrombin time stands in stark contrast to the twenty-eight pages of lab results, many of which reveal abnormal prothrombin times over an extended period of time.

The Commissioner also argues that Plaintiff did not establish that he met the criteria for Listing 5.05(F)(3) because he "failed to provide evidence of repeated abnormalities of enzymes indicative of hepatic dysfunction." Contrary to the Commissioner's argument the record contains a medical note by Dr. Kondapalli, in which he stated that Plaintiff's "liver function tests are higher than normal, more than twice the upper limit of normal."[27] This is significant because the lab results evidence that Plaintiff's AST and ALT were consistently high, which is representative of an individual suffering from hepatic necrosis.[28]

Lastly, the Commissioner contends that the ALJ did not have a duty to obtain the testimony of a medical expert to interpret the laboratory findings to determine equivalence to the Listing because the requirement to receive such expert opinion evidence was satisfied when the state agency medical consultants provided their assessments. While the requirement to receive expert opinion evidence to establish equivalence may be satisfied through documentation from a state agency medical consultant, that argument does not apply, here, for the simple reason that the critical lab results were introduced into the record *after* the completion of the physical assessment forms by the state agency consultants and thus the state agency medical consultants did not have the benefit of this information when they issued their assessments.

---

[27] R. 133.

[28] "ALT and AST are two of the most reliable markers of hepatocellular injury or necrosis." *See* Paul T. Giboney, M.D., *Mildly Elevated Liver Transaminase Levels in the Asymptomatic Patient*, American Family Physician, Vol. 71/No.6 (March 15, 2005).

Accordingly, because the ALJ failed to consider the critical laboratory results and failed to utilize a medical advisor to interpret whether the laboratory results were sufficient to meet the criteria for Listing 5.05(F)(3) for chronic liver disease, the ALJ's decision was not supported by substantial evidence and, therefore, this case must be remanded to the ALJ to evaluate Plaintiff's claim at step three of the sequential analysis to determine whether Plaintiff's chronic liver disease meets or equals Listing 5.05(F)(3).[29]

## V.  CONCLUSION

In light of the above, this action is due to be **REVERSED AND REMANDED** to the Commissioner of Social Security in accordance with sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with Order. On remand the ALJ should address the laboratory results and obtain a medical expert opinion regarding whether Listing 5.05(F)(3) is met or equaled. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 28, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
   All Counsel

---

[29] Because this case is being reversed and remanded for evaluation at step three of the sequential analysis, it is unnecessary for the Court to address Plaintiff's second argument that the ALJ erred in failing to obtain the testimony of a vocational expert at step five rather than relying upon the medical-vocational guidelines.